**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**
**CIVIL ACTION NO. 4:15CV-00039-HBB**

**KNOX D. ALFORD, JR.**                                                          **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                               **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Plaintiff Knox D. Alford, Jr., ("Alford") brings this action pursuant to 42 U.S.C § 405(g),

seeking review of the Commissioner of Social Security's final decision denying his application for

disability insurance benefits under Title II.   Both Alford (DN 11) and the Commissioner (DN 15)

have filed a Fact and Law Summary.   Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the

parties have consented to the undersigned United States Magistrate Judge conducting all further

proceedings in this case, including issuance of a memorandum opinion and entry of judgment,

with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12).

The matter is ripe for determination.

### FINDINGS OF FACT

Alford was 57-years-old on his alleged disability onset date of December 30, 2009.   From

1977 to 2000, Alford worked at Texas Gas and Transmission ("Texas Gas"), first as a designer in

the engineering section, and later as a supervisor (Tr. 30). He left his position at Texas Gas when the company began downsizing and took a voluntary severance package (Tr. 31). Around this same time, Alford began experiencing severe back problems (Tr. 30-31).

After leaving Texas Gas, Alford started his own business, a technology company/consulting firm, where he served as the president (Id.). Alford explains that he underwent his first back surgery in 2001, which helped relieve his pain for about three years (Tr. 33-34). Subsequently, Alford underwent a second back surgery in 2005, which he states was less effective at resolving his symptoms (Tr. 34). Alford indicates that although he remained president of his company, around 2007, he was no longer able to complete his work obligations (Tr. 35). Consequently, he was forced to hire additional employees to help oversee the operations (Tr. 36). He explained that an employee built him a bed to keep in his office, and he spent "a major part" of each day there (Tr. 35). Alford closed the business down in April of 2010 because the additional employees and overhead costs due to his inability to perform work made it impractical to continue (Tr. 36).

On May 25, 2012, Alford protectively filed an application for social security disability insurance benefits ("DIB") (Tr. 57). Therein, he alleged that, as of December 30, 2009, he has been unable to work due to degenerative disc disease, depression, and anxiety (Id.). Alford explained that his spinal pain is almost always present but is subject to activities such as walking, standing, travelling, and sitting for extended periods (Tr. 206). He further stated that his declining health "has adversely affected many of [his] abilities toward sustainable employment and other activities" (Tr. 210). He specifically explained that he worked diligently during his self-employment until the pain, depression, and anxiety began to affect "most all aspects of normal professional and personal activities" (Tr. 213).

Alford's application was denied initially (Tr. 67) and upon reconsideration (Tr. 78). Administrative Law Judge Jerry Faust ("ALJ") conducted a video hearing in St. Louis, Missouri on September 24, 2013 (Tr. 24).   Alford attended the hearing by video teleconference in Owensboro, Kentucky, and was represented by Christopher Rhoads (Id.).   Impartial vocational expert, Kenneth Boaz, also attended and testified at the hearing (Id.).   On October 24, 2013, the ALJ issued an unfavorable decision, finding that Alford was not disabled during the relevant period (Tr. 15-19).

The ALJ used the five-step sequential evaluation process to evaluate Alford's disability claim.   20 C.F.R § 404.1520; Kyle v. Comm'r of Soc. Sec., 609 F.3d 847, 855 (6th Cir. 2010). At step one, the ALJ found that through, and subsequent to, December 31, 2009, Alford's date last insured, he engaged in substantial gainful activity (Tr. 17).   Thus, through December 31, 2009, there was no continuous 12-month period during which Alford did not engage in substantial gainful activity (Tr. 19).   Because the ALJ found Alford could not prove disability at the first step, he did not continue with the other steps of the sequential evaluation process.

Alford appealed the ALJ's decision (Tr. 6).   The Appeals Council declined his request for review (Tr. 1).   At this point, the ALJ's decision became the final decision of the Commissioner, and Alford appealed to this Court (DN 1).

CONCLUSIONS OF LAW

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility."   Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).   Instead, the Court's review of the Administrative Law Judge's decision is

limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion.   *See* Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).   Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."   Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993).

Alford's primary ground for appeal is that the ALJ erred at the first step of the evaluation process in finding that he performed substantial gainful activity subsequent to his date last insured (DN 11-1, at p. 3).   At step one of the sequential evaluation process, the claimant bears the burden of proving that he did not engage in "substantial gainful activity" during the period in question. *See* Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997).   Substantial gainful activity is work activity that is both substantial, meaning it "involves doing significant physical or mental activities," 20 C.F.R. § 404.1572(a), and gainful, meaning it "is the kind of work usually done for pay or profit, whether or not a profit is realized."   20 C.F.R. § 404.1527(b).   Work performed on a part-time basis may still be considered substantial.   Davis v. Sec'y of Health & Human Servs., 915 F.2d 186, 189 (6th Cir. 1990).

In cases involving a self-employed claimant, like Alford, the Administrative Law Judge considers the claimant's activities and their value to his business in deciding whether he has engaged in "substantial gainful activity."   20 C.F.R. § 404.1575(a)(2).   The Administrative Law Judge does not consider the claimant's income alone because the amount of income actually received may depend on a number of different factors.   Id.   Instead, the regulations direct the

Administrative Law Judge to use the following three tests to determine whether the claimant has

engaged in substantial gainful activity:

> (i) Test [O]ne: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business . . .
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R § 404.1575(a)(2)(i)-(iii).   If the Administrative Law Judge finds that the claimant has

not engaged in substantial gainful activity under test one, he is required to consider tests two and

three.  Id.

Here, the ALJ evaluated all three tests in making his step one determination (Tr. 17-19).

The ALJ found that Alford did not meet test one because his earnings records do not show any

income from his self-employment in 2009 (Tr. 18).   The ALJ also found that Alford did not meet

test two because there is no evidence of what comparable unimpaired individuals earn, and the

claimant testified that he was doing considerably less than he was previously (Id.).   In analyzing

the third test, however, the ALJ did find that Alford's self-employment constituted substantial

gainful activity during the relevant period (Id.).   The ALJ relied on Alford's testimony from the

hearing that if he had to pay someone to do the work that he performed during 2010, the pay would

begin around $30,000 per year (Id.).

Alford does not challenge the ALJ's findings regarding the first test, but disagrees with the ALJ's evaluation of tests two and three.   As to test two, Alford feels that the ALJ failed to develop the record, which directly affected the misapplication of test three (DN 11-1, at p. 5).   As to test three, Alford claims the ALJ disregarded the framework identified in SSR 83-34 and instead relied on one fundamentally flawed hypothetical (Id.).   The relevant exchange between the ALJ and Alford during the hearing is as follows:

> Q      Back in 2010, what were you doing for your business?
>
> A      I was still the president and CEO of the operation, just overseeing and trying to maintain daily operations.
>
> Q      So, you were still running the company?
>
> A      Yes, I was.
>
> Q      If you were to had [sic] to pay somebody to do what you were doing, what do you think you would have had to pay them?
>
> A      Well, actually I had begun paying other people to assist with that, your honor.
>
> Q      No, well, my question is, to pay somebody what you were doing.
>
> A      **To pay somebody what I was doing would probably begin at an area of $30,000 as an administrative or management individual.**
>
> Q      Is that a year?
>
> A      Yes, sir.

(Tr. 48) (emphasis added).

Alford claims the hypothetical question, and his responses, caused a level of confusion and miscommunication during the hearing because it is unclear whether his answers refer to what he

would pay an impaired individual or an unimpaired individual to do his work (DN 11-1, at p. 6). Alford argues that his answer identifies what he would pay an *unimpaired* person to do his work (Id. at p. 8).  In support, Alford points to exhibits 4D, 5D, and 6D, which demonstrate that Alford's earnings decreased over time as follows: $45,000 in 2000, $42,254 in 2001, $23,314 in 2002, $7,957 in 2008, and $0 in 2009 (Id.).  Alford reasons that when his response is placed into the factual context of his earnings statements, it is obvious that he was referencing an unimpaired worker because $30,000 is more similar to his income from 2000-2002 when he was unimpaired (Id.).

The Commissioner disagrees, arguing that the testimony at the hearing clearly indicates that both the ALJ and Alford were discussing Alford's work activity and its value in 2010, rather than his work when he was unimpaired several years earlier (DN 15, at p. 7).  The Commissioner believes that Alford's testimony alone establishes substantial gainful activity under test three and cites to cites to Kenney v. Comm'r of Soc. Sec., No. 3:09 CV 2440, 2010 WL 5441628, at *8 (N.D. Ohio Dec. 10, 2010), for support.  Like Alford, the claimant in Kenney gave testimony regarding what he believed his services were worth to his company. 2010 WL 5441628, at *8.  The court held that because the claimant testified that his services were worth an amount over that which creates a presumption of substantial gainful activity, the Administrative Law Judge's decision was supported by substantial evidence.  Id. at *8-9.

After reviewing the exchange between the ALJ and Alford, the undersigned concludes that both parties were undoubtedly referring to the part-time work Alford performed when he was impaired.  First, the ALJ specifically identifies 2010 as the year in question.  Second, the ALJ clarified to Alford that he was asking about the time period in which Alford had begun paying

other employees to assist with his work.   Finally, Alford began his response by restating the ALJ's question, indicating he was not confused.

Moreover, after the ALJ finished his questioning, Alford's attorney followed up by stating: "[T]he judge asked a very good question there, what, you know, the value of your services or what you were doing during the end of your employment, say during the calendar year of 2010" (Tr. 49). At this point, Alford had an opportunity to indicate any confusion or misunderstanding regarding the estimated value of his services from his earlier response.   Instead, Alford responded "[o]kay," and went on to discuss how during 2010 he was contributing "maybe a third" of what he had previously contributed to daily operations because he was dependent on administrative people he hired to help with the work (Tr. 49-50).    Alford's attorney's restatement of the ALJ's question bolsters the conclusion that Alford was referring to an impaired worker when he made his estimate.    Consequently, the undersigned finds there is no indication of confusion or misunderstanding in the hearing testimony.

As for Alford's argument that his earnings records (Exhibits 4D, 5D, and 6D) prove that his response reflected what he would pay an unimpaired worker, the undersigned is similarly not convinced.   SSR 83-34 states that "[s]elf-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits."[1]   1983 WL 31256, at *1.   Here, Alford testified that his company was generating income at the end, but he took only minimal withdrawals because of the additional

---

[1] Alford also argues that the ALJ failed to properly consider Exhibits 4D, 5D, and 6D in making his step one determination.   However, the ALJ's decision specifically cites to Exhibit 4D and states that "the claimant's earnings records do not show any earnings in 2009" (Tr. 18).   The ALJ did consider the earnings records but was not required by the regulations to consider his income in isolation. *See* SSR 83-34, 1983 WL 31256, at *1.   Accordingly, the ALJ properly considered the earnings records, along with Alford's testimony, in making his determination.

overhead costs from hiring additional employees (Tr. 50).   Alford's testimony indicates that his income was inconsistent during the final years of the company because of additional costs the company incurred.   Thus, it was appropriate for the ALJ to consider the economic value of Alford's services, rather than relying solely on whether an immediate income was generated from such services.   SSR 83-34, at *1.

Alford also claims that the ALJ disregarded the framework identified in SSR 83-34 by failing to supplement the record with authoritative sources in the community (DN 11-1, at p. 6). The Commissioner argues that because the ALJ was able to rely on Alford's testimony as to the worth of his services, as the president and CEO of his company, it was unnecessary to supplement the record with data from outside authorities (DN 15, at p. 5).     SSR 83-34 directs that the facts of a given case control whether an Administrative Law Judge must obtain evidence from outside the record in determining the worth of a claimant's services.   Froncheck v. Astrue, 392 F. App'x 484, 486-87 (7th Cir. 2010) (citing Social Security Ruling 83-34, 1983 WL 31256, at *10).   "[W]here the value of a claimant's work clearly exceeds the threshold amounts in the earnings guidelines, the ALJ need not obtain additional evidence."   Id. at 487.

Unlike other cases where courts have remanded when the Administrative Law Judge made a groundless determination of what the claimant's services are worth, *see* Ellis-Clements v. Comm'r of Soc. Sec., Civil Action No. 2:10-CV-230, 2011 WL 2884870, at *6-7 (D. Vt. July 18, 2011);   Gewecke v. Astrue, No. 4:09CV3137, 2010 WL 2545560, at *2, *4 (N.D. Neb. June 18, 2010); the ALJ here based his decision on explicit testimony from Alford as to what he believed his own work was worth.   A claimant's testimony can constitute substantial evidence in the record to support an Administrative Law Judge's conclusion that the claimant can perform substantial gainful activity.   *See* Kenney v. Comm'r of Soc. Sec., No. 3:09 CV 2440, 2010 WL 5441628, at

*8 (N.D. Ohio Dec. 10, 2010).   Since the $30,000 estimate provided by Alford clearly exceeds the threshold amount in the earnings guidelines,[2] the ALJ was not required to supplement the record with outside information.   As such, the undersigned finds that the ALJ's decision is supported by substantial evidence in the record, namely Alford's testimony, and complies with the applicable law.

Lastly, Alford claims that the ALJ failed to recognize any severe impairment that he suffers from and failed to determine that the combined effects of his impairments render him totally disabled (DN 11-1, at p. 8).   Alford is referring to the ALJ's decision to not make determinations at steps two through five of the sequential evaluation process.   20 C.F.R. 404.1520(a)(4) provides that if the claimant is found to be conclusively disabled or not disabled at a step, the Administrative Law Judge should make the disability determination at that step, and the inquiry should end. McClanahan v. Comm'r of Soc. Sec., 193 F. App'x 422, 425 (6th Cir. 2006).   Here, the ALJ found at step one that Alford had engaged in substantial gainful activity and, therefore, was not disabled during the relevant period.   Because the ALJ adhered to the regulations, he properly terminated the disability evaluation at step one.

---

2 $30,000 per year equals $2,500 per month, which substantially exceeds the threshold of $1000 per month identified by the Social Security Administration as the average monthly earnings threshold for substantial gainful activity in 2010.   *See* https://www.socialsecurity.gov/oact/cola/sga.html.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel